## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

LYNN GRANT and
ERIKA ERVIN,

      Plaintiffs,

v.

PRINCE GEORGE'S COUNTY,
MARYLAND,
HENRY P. STAWINSKI, III and
HECTOR VELEZ,

      Defendants.

Civil Action No.:  TDC-21-2171

## MEMORANDUM OPINION

Plaintiffs Sergeant Lynn Grant and Sergeant Erika Ervin, officers of the Prince George's County Police Department ("PGCPD"), have filed a civil action against Defendants Prince George's County, Maryland, former PGCPD Chief Henry P. Stawinski, III, and former PGCPD Interim Chief Hector Velez in which they allege race discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 arising from the PGCPD promotion system, as well as specific instances of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) (2018).  Defendants have filed a Motion to Dismiss or, in the Alternative, for Judgment on the Pleadings ("the Motion to Dismiss") and a Motion to Strike portions of the Second Amended Complaint, which are now fully briefed.  Upon review of the submitted materials, the Court finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, and the Motion to Strike will be DENIED.

## BACKGROUND

### I.     The PGCPD Promotion System

Prince George's County, Maryland is the second-most populous county in Maryland and has one of the largest African American populations among counties within the United States, with Black residents constituting 64 percent of its population. PGCPD is organized and operated by Prince George's County ("the County"), a municipal corporation within Maryland. According to the Second Amended Complaint, the PGCPD is disproportionately made up of white officers, especially among the upper ranks: over 60 percent of lieutenants and over 80 percent of captains are white officers. Pursuant to a system in which promotions to sergeant, lieutenant, and captain occur every two years based in part on a written promotion test, the promotion rates for Black officers to the positions of sergeant and lieutenant in 2016 and 2018 were significantly lower than the promotion rates for white officers. In 2017, while Plaintiff Henry Stawinski, III was the Chief of PCGPD, the PGCPD convened a panel on equity which identified a number problems with the existing promotion system that may have contributed to the disparity in promotion rates, including the use of predominantly white subject matter experts in the process of creating the promotion tests and the disproportionate assignment of white officers to units that afforded more time to study and more opportunities to develop experience on issues that are addressed in the promotion tests. The panel, however, was disbanded before any implementation of changes to address the problems it identified.

Under the promotion system in effect in 2018, for each promotion cycle occurring every two years, and for each position to which promotions were to be made, a ranked promotion eligibility list was created based on applicants' scores on the promotion test. The PGCPD practice was that following the promotion test, available sergeant and lieutenant positions would be filled

with applicants from the top of the promotion eligibility list, and subsequent vacancies arising before the next promotion test would be filled by the next applicants, in rank order, on the promotion eligibility list. The promotion eligibility lists expired 60 days prior to the date that the next promotion test would be given. Thus, the promotion eligibility lists generated following the 2018 promotion tests were scheduled to expire on February 26, 2020, 60 days before the 2020 promotion tests were scheduled to be administered on April 26, 2020. Due to the COVID-19 pandemic, however, the 2020 promotion tests were postponed until September 2020. According to Plaintiffs, under ordinary practice, the expiration date of the promotion eligibility list would have been extended to 60 days before the rescheduled promotion tests, in this case, to July 12, 2020. Nevertheless, the 2018 promotion eligibility lists expired based on the original schedule, thus preventing officers who were next on those lists to be promoted to fill vacancies arising after February 26, 2020. Plaintiffs assert that most of the officers adversely affected by the failure to extend the time period for using the promotion eligibility lists were Black or Hispanic. Plaintiffs challenge this decision and others which they allege resulted in race discrimination in the failure to promote them to the position of lieutenant.

## II.    Sgt. Grant

Sgt. Grant, an African American woman, has served as a PGCPD police officer since 1999. Since 2010, she has held the rank of sergeant. In January 2011, Sgt. Grant was assigned to the PGCPD Bureau of Investigation/Criminal Investigation Division ("BOI/CID"), through which she was assigned to serve as a PGCPD Task Force Officer in the Public Corruption Unit of the Federal Bureau of Investigation ("FBI"), Baltimore Field Office. In 2013, Sgt. Grant was assigned to the FBI Cross-Border Task Force ("the FBI Task Force"), which works with other federal law enforcement agencies to address gang activity in Prince George's County. During these

3

assignments, which continued for approximately six years, Sgt. Grant received outstanding performance evaluations.

On August 25, 2017, Sgt. Grant's supervising officer, Major Anthony Schartner, informed Sgt. Grant that she was being removed from the FBI Task Force and reassigned to the PGCPD Bureau of Forensic Science ("BFS"). Major Schartner told Sgt. Grant that the transfer was made because there were "too many supervisors in the Task Force" and that the PGCPD was "restructuring" the FBI Task Force, but he later told her that the situation was "fucked up" but "out of my hands." Second Am. Compl. ("SAC") ¶¶ 50, 52, ECF No. 33. At that time, other sergeant positions in the BOI/CID to which Sgt. Grant had been previously assigned were vacant, but Sgt. Grant received no explanation as to why she was transferred to the BFS and not back to the BOI/CID. Sgt. Grant's duties at the BFS consisted of collecting mail, distributing summonses, and providing building escorts, which she viewed as a below the level of responsibility she had on the FBI Task Force. The BFS position also offered fewer opportunities for Sgt. Grant to earn overtime, which resulted in a reduction in her overall pay by approximately $18,000 per year. Nevertheless, Sgt. Grant remained as a sergeant and was not demoted in rank.

Although Sgt. Grant sought to secure another position outside of the BFS, she was unsuccessful. On September 18, 2018 and on November 6, 2018, Sgt. Grant separately applied for two different open positions on the FBI Task Force but was not selected to fill either one. The positions were eventually filled by two white male sergeants who had less time and experience at the rank of sergeant than Sgt. Grant and who did not possess any prior experience on a federal task force, which Sgt. Grant had. In addition, in September 2018, a different FBI Task Force position became available, but Sgt. Grant was not informed about that open position even though she had previously worked for the FBI Task Force with positive reviews. Late in 2018, Sgt. Grant was

recommended by a lieutenant in the Internal Affairs Division ("IAD") for a position in the IAD, but she was not selected.

On February 12, 2019, Sgt. Grant filed a complaint with the County in which she complained that her transfer to the BFS and PGCPD's subsequent failure to consider her for other positions outside the BFS constituted race discrimination. Two days after her filing, PGCPD Deputy Chief Melvin Powell, who was also the PGCPD Equal Employment Opportunity ("EEO") Coordinator, stopped Grant in the hallway and told her that the reason that she had been transferred from the FBI Task Force to the BFS was because the FBI wanted her off the team. Sgt. Grant told Deputy Chief Powell that this reason was different from the explanation she received at the time that the transfer had occurred, and that Sgt. Grant's former supervisor had requested her return to the FBI Task Force. In response, Deputy Chief Powell just stated that Sgt. Grant had missed the deadline for filing an EEO complaint because the events she referenced had occurred in 2017. On February 26, 2019, Deputy Chief Powell told Sgt. Grant that he was closing out her case due to the missed deadline.

On March 1, 2019, PGCPD Acting Deputy Chief Harvin called Sgt. Grant to his office for a meeting that included Deputy Chief Powell. At the meeting, Deputy Chief Powell asked Sgt. Grant to sign a letter stating that her February 12, 2019 EEO complaint was not lodged within the appropriate time frame. Sgt. Grant refused to sign the letter and maintained that it was timely filed. Deputy Chief Powell then claimed that her complaint was formatted incorrectly. When Sgt. Grant pointed out that had he been willing to meet with her, she could have received guidance on the need to format the complaint correctly, Deputy Chief Powell became agitated, raised his voice, and reiterated that she had been removed from the FBI Task Force because the FBI had wanted her removed.

On March 4, 2019, Sgt. Grant filed her first charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). According to Sgt. Grant, following this filing, she was subjected to retaliation.

Meanwhile, on April 29, 2018, Sgt. Grant took the scheduled promotion examination to become a lieutenant. On September 5, 2018, Sgt. Grant learned that she was ranked 44th out of 113 officers on the 2018 promotion eligibility list. As lieutenant positions became available, sergeants would be promoted to lieutenant starting from the top of this list. As discussed above, under the PGCPD promotion policy, the 2018 promotion eligibility list was set to expire 60 days before the 2020 promotion tests scheduled to occur on April 26, 2020. However, on April 13, 2020, the 2020 promotion tests were rescheduled to September 12, 2020 due to the COVID-19 pandemic, without any extension of the time period for filling vacancies using the 2018 promotion eligibility lists. As a result, Sgt. Grant and other sergeants who had yet to be promoted from the 2018 promotion list were not permitted to fill lieutenant positions that became available between February 26, 2020 (60 days before the originally scheduled 2020 promotion test) and July 14, 2020 (60 days before the rescheduled 2020 promotion test).

On January 4, 2021, Sgt. Grant submitted another internal EEO complaint about "discriminatory treatment," apparently in reference to the application of the promotion eligibility lists. SAC ¶ 90. On January 27, 2021, Sgt. Grant filed a second charge of discrimination with the EEOC. On March 17, 2021, Deputy Chief and EEO Coordinator Lakina Webster responded to Sgt. Grant's internal EEO complaint by stating that it "did not rise to the level of EEO." *Id.*

According to Sgt. Grant, from September 1, 2020 through September 1, 2021, police officers seeking the rank of Police Officer First Class or Corporal were to be automatically promoted if they met requirements for time-in-grade and had satisfactory performance evaluations.

Although Sgt. Grant continued to be eligible for promotion to lieutenant based on her time-in-grade, and satisfactory evaluations, she was not promoted during that time period.  Sgt. Grant alleges that this failure to promote her, along with other actions, constituted unlawful retaliation.

On January 22, 2022, Sgt. Grant took another promotion test to attain the rank of lieutenant. Around this time, Sgt. Grant learned that the position in the Public Corruption Unit which she had formerly occupied had become vacant.  Pursuant to the PGCPD General Order Manual, managers seeking to fill a vacancy must announce the position through the internal Job/Transfer Opportunities Bulletin.  This position, however, was not announced, and Sgt. Grant was not given an opportunity to apply to the position.  Although PGCPD policy requires that interviews be conducted for all announced positions, no interviews took place to fill this Public Corruption Unit position.  The person who eventually filled that position was a white male sergeant who had 11 fewer years of experience than Sgt. Grant.

On February 24, 2022, Sgt. Grant filed a third charge of discrimination with the EEOC. Since filing that charge, Sgt. Grant was ranked 45th on the promotion eligibility list based on the January 2022 promotion test.  After appealing this ranking, she was moved up to 39th on June 22, 20222.  Following the first group of promotions on August 14, 2022, Sgt. Grant moved up to 19th. Sgt. Grant has still not been promoted to lieutenant.

### III.   Sgt. Ervin

Sgt. Ervin, who is an African American woman, has worked as a PGCPD police officer since 2002.  In December 2012, she was promoted to sergeant and worked on the PCGPD Special Operations Division, Conflict Management Team.

In April 2016, Sgt. Ervin took the 2016 promotion test for lieutenant but failed to pass the test by three points.  She appealed her score on the basis that the test was discriminatory.  Her new

supervisor at the time, Lieutenant Jason Rorick, offered to "help" her write her appeal. SAC ¶ 123. When Sgt. Ervin declined, Lt. Rorick questioned her on who had assisted her with her appeal and thus implied that she lacked the ability to draft it herself. After this incident, Lt. Rorick began to cut Sgt. Ervin out of decisions regarding the squad and to work directly with a white male corporal under Sgt. Ervin's command, thus undermining her authority over her squad. In October 2016, Sgt. Ervin was transferred to District VI with no explanation other than that District VI "needed a sergeant." *Id.* ¶ 125. In November 2017, Sgt. Ervin was transferred to the PGCPD Training and Education Division as an Administrative Sergeant.

In April 2018, Sgt. Ervin passed the 2018 promotion test for lieutenant and was ranked 45th on the 2018 promotion eligibility list. However, she was never promoted to lieutenant. Ervin registered for the April 2020 promotion test, which was postponed to September 2020. At that point, she declined to take the September 2020 promotion test out of concern that she could contract COVID-19.

According to Plaintiffs, Sgt. Ervin, like Sgt. Grant, was subjected to discrimination when the expiration date for the 2018 promotion eligibility lists was not extended to July 12, 2020, or 60 days before the rescheduled 2020 promotion tests. Plaintiffs also assert that Sgt. Ervin was eligible for an automatic promotion during the period of September 1, 2020 to September 1, 2021 because she met certain time-in-grade requirements and had satisfactory performance evaluations, but that she did not receive such a promotion. On April 7, 2022, Sgt. Ervin took the 2022 promotion test for lieutenant and was ranked 5th. Sgt. Ervin has still not been promoted to lieutenant.

8

## IV.    The Complaint

On August 24, 2021, Plaintiffs filed their initial Complaint in this case in which they alleged one count of race discrimination in employment under 42 U.S.C. § 1981 against Prince George's County, former PGCPD Chief Stawinski, and former PGCPD Interim Chief Hector Velez. In the currently operative Second Amended Complaint filed on October 27, 2022, Plaintiffs assert five causes of action. In Count I, Plaintiffs allege a claim of race discrimination in employment under 42 U.S.C. § 1981 against Chief Stawinski and Chief Velez in their individual capacities based on the maintenance of the allegedly discriminatory PGCPD promotion policy, the failures to promote Sgt. Grant on multiple occasions, and a discriminatory transfer of Sgt. Ervin in 2017. In Count II, Plaintiffs allege a claim under § 1981 or, in the alternative, under 42 U.S.C. § 1983, for race discrimination in employment against the County relating to the PGCPD promotion policy and practices. In Count III, Plaintiffs assert a claim against the County under § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution arising from the PGCPD's customs, policies, and practices that permitted race discrimination and retaliation relating to promotions. In Count IV, Sgt. Grant asserts a claim against the County under Title VII, 42 U.S.C. § 2000e-3(a), for retaliation against her for filing discrimination complaints. In Count V, Sgt. Grant asserts a claim under Title VII, 42 U.S.C. § 2000e-2(a), for unlawful discrimination relating to the PGCPD's failure to promote her to a position for which she was qualified.

## DISCUSSION

In its Motion to Dismiss or for Judgment on the Pleadings, Defendants argue that (1) the § 1983 claims are time-barred; (2) Title VII preempts constitutional claims for race discrimination in employment under § 1983; (3) the § 1981 claims against Chief Stawinski and Chief Velez fail

because Plaintiffs have not alleged sufficient facts to establish personal or supervisory liability; (4) the § 1981 and § 1983 claims against the County fail because Plaintiffs have not alleged sufficient facts to demonstrate a custom or policy that has caused discrimination; (5) the Title VII race discrimination claims are time-barred; (6) Plaintiffs have failed to allege sufficient facts to support valid Title VII retaliation claims; and (7) Chief Stawinski and Chief Velez are entitled to qualified immunity.  Defendants also move to strike certain facts from the Second Amended Complaint.

**I.      Motion to Strike**

Defendants have moved to strike portions of the Second Amended Complaint which reference *Hispanic National Law Enforcement Association NCR v. Prince George's County* ("*HNLEA*"), 535 F. Supp. 3d 393 (D. Md. 2021), a case heard by this Court in which Plaintiffs sought and obtained a preliminary injunction requiring changes to the PGCPD promotion policy, including in relation to the use of promotion tests, and which was later resolved by settlement. *Id.* at 430.

Federal Rule of Civil Procedure 12(f) provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see, e.g., Haley Paint Co. v. E.I. du Pont de Nemours & Co.,*, 279 F.R.D. 331, 335 (D. Md. 2012).  In determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Haley Paint Co*., 279 F.R.D. at 336.  Rule 12(f) motions are generally disfavored because striking a portion of a pleading is a drastic remedy and is often sought by the movant simply as a dilatory tactic. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).

In this instance, references to *HNLEA* are appropriate because the facts of that case are relevant to the Court's consideration of the claims against the County in Counts II and III, particularly as to the issue of whether the County has a custom or policy of discrimination based on its promotion policy. The statements in the Second Amended Complaint referencing *HNLEA* are not inaccurate, nor do they meet any of the specific grounds for striking language in a pleading. *See* Fed. R. Civ. P. 12(f). The Motion to Strike will be denied.

## II.    Legal Standards

Defendants have filed their Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings under Federal Rules of Civil Procedure 12(b)(6) and 12(c). Courts "apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, on a Rule 12(b)(6) motion, courts consider only the pleadings and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs

11

do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, Defendants have attached as exhibits to their Motion various EEOC charges of discrimination filed by Plaintiffs. Because these discrimination complaints are referenced in the Second Amended Complaint and are of undisputed authenticity, the Court may consider them in resolving the Motion.

## III.    Statute of Limitations

As a threshold issue, Defendants argue that the statute of limitations bars the § 1983 claims in Counts II and III. Because 42 U.S.C. § 1983 does not contain a statute of limitations, courts are to apply the applicable state law statute of limitations that is "most analogous" and "most appropriate" to the § 1983 claim asserted. *Owens v. Okure*, 488 U.S. 235, 239 (1989). Under this principle, for § 1983 claims brought in Maryland, courts apply Maryland's general civil statute of limitations of three years. *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2020)); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 429–30 (D. Md. 2013). Defendants argue that because the Second Amended Complaint was filed on October 27, 2022, the § 1983 claims are time-barred if they are based on conduct occurring before October 27, 2019. However, an amended pleading will "relate[] back" to the date of the original pleading when it asserts "a claim or defense that arose out of the conduct, transaction or occurrence set out … in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Here, the original Complaint, filed on August 24, 2021, alleged a § 1981 cause of action based on facts that are substantially the same at those asserted in the Second Amended Complaint, including allegations about the discriminatory impact of the PGCPD promotion policy and the specific adverse personnel actions against Plaintiffs. Thus,

although Plaintiffs later added the § 1983 claims, they were based on the same conduct and occurrences referenced in the original Complaint and therefore allow the Second Amended Complaint to relate back to the date of the original pleading on August 24, 2021. Accordingly, § 1983 claims arising no more than three years before that date, or earlier than August 24, 2018, are timely. In turn, § 1983 claims arising more than three years before that date are time-barred. Based on these determinations, to the extent that Plaintiffs are seeking to advance a § 1983 claim based on Grant's transfer from the FBI Task Force to BFS in August 2017, that claim is time-barred.

## IV.    Preemption

Defendants, relying on outdated case law, also argue that the § 1983 claims in Counts II and III should be dismissed because such claims of employment discrimination may be pursued only through Title VII. In *Keller v. Prince George's County*, 827 F.2d 952 (4th Cir. 1987), the United States Court of Appeals for the Fourth Circuit rejected this argument, stating that the legislative history of the 1972 amendments to Title VII, which extended that statute's protections to state and local government employers, demonstrates that Title VII "was not intended to preempt the preexisting remedy under § 1983 for violations of the Fourteenth Amendment by state employers." *Id.* at 958. The Motion will therefore be denied as to Defendant's preemption argument.

## V.    Chief Stawinski and Chief Velez

In Count 1, Plaintiffs assert a claim under 42 U.S.C. § 1981 against Chief Stawinski and Chief Velez in their individual capacities for race discrimination. In their Motion, Defendants argue that this count should be dismissed because Plaintiffs have not alleged sufficient facts to support a § 1981 claim against these Defendants based on supervisory liability. Section 1981 provides in part: "All persons within the jurisdiction of the United States shall have the same right

in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and

to the full and equal benefit of all laws and proceedings for the security of persons and property as

is enjoyed by white citizens." 42 U.S.C. § 1981. To state a claim for race discrimination under §

1981, a plaintiff must show that (1) the plaintiff "is a member of a racial minority"; (2) "the

defendant intended to discriminate on the basis of race"; and (3) "the discrimination concerned

one or more of the activities protected by the statute." *Williams v. Wicomico Cnty. Bd. of Educ.*,

836 F. Supp. 2d 387, 394 (D. Md. 2011). On a § 1981 claim, a supervisor cannot be held liable

for the actions of subordinates unless that supervisor was "personally involved in the alleged

deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015); *see Carson v.*

*Giant Food*, 187 F. Supp. 2d 462, 483 (D. Md. 2002). Rather, a supervisor can be held liable only

if that individual "intentionally cause[d]" the employer "to infringe the rights secured by section

1981." *Luy v. Balt. Police Dep't.*, 326 F. Supp. 2d 682, 688 (D. Md. 2004).

　　Here, the Complaint contains insufficient allegations to support claims against Chief

Stawinski and Chief Velez under § 1981. In Count I, Plaintiffs allege race discrimination based

on individual personnel decisions, such as demotions, transfers, and failures to promote, relating

to Sgt. Grant and Sgt. Ervin. However, they fail to allege facts demonstrating that Chief Stawinski

or Chief Velez had any personal involvement in, or knowledge of, those individual personnel

decisions as necessary to establish personal liability for those actions.

　　In Count I, Plaintiffs also allege race discrimination under § 1981 based on the assertion

that Defendants "knowingly and intentionally maintained a racially discriminatory set of hiring

practices that resulted in Black officers like Plaintiffs being offered fewer opportunities for

promotion when compared to white officers with similar skills, experience, and performance."

SAC ¶ 143. As to this part of the claim, Plaintiffs have generally alleged that Chief Stawinski, in

his position as Chief of Police from 2016 to June 2020 "condoned, ratified, and authorized discriminatory conduct, policies, and practices," *id.* ¶ 28; that he and Chief Velez, who was the PGCPD Interim Chief from June 2020 until May 2021, were "directly involved" in the challenged promotion procedures, *id.* ¶ 142; and that, "through decisions" they made, PGCPD maintained a racially discriminatory promotion policy, *id.* ¶ 169. Such conclusory allegations, without more specific facts, are insufficient to support claims against these defendants.

As factual support, Plaintiffs point only to the 2017 panel which identified possible problems with the existing promotion system that may have resulted in a disparate impact that adversely affected Black officers and allege that Chief Stawinski "let the 2017 Panel die without issuing a report." *Id.* ¶ 35. Even if true, this allegation is not sufficient to support a claim of personal liability for the failure to promote Sgt. Grant or Sgt. Ervin on any particular occasion. In the Second Amended Complaint, Sgt. Grant asserts that she first took the promotion test for lieutenant in 2018 but does not allege that her failure to be promoted was the result of her specific ranking on the promotion eligibility list. Rather, she asserts that the decision not to extend the use of the 2018 promotion eligibility list from February 2020 to July 2020, as a result of the postponement of the 2020 promotion test to September 2020 in light of the COVID-19 pandemic, was influenced by race discrimination. She fails, however, to allege any specific facts that would demonstrate that Chief Stawinski or Chief Velez made that decision, much less facts that would show that one or both made the decision with the intent to discriminate based on race. The only other specific allegation offered in support of the § 1981 claim against Chief Velez is the assertion that on August 12, 2020, after the expiration of the 2018 promotion eligibility list without any extension, Chief Velez stated that the promotion of officers affected by that expiration was "out of his hands," a vague statement that does not provide a basis to find intentional discrimination by

Chief Velez. *Id.* ¶ 89. Thus, while additional facts uncovered through discovery may provide a basis to conclude that one of these individuals made the decision and had the requisite intent, the present allegations are insufficient. The Court will therefore dismiss without prejudice the § 1981 claim in Count I against Chief Stawinski and Chief Velez. Count I will therefore be dismissed.

## VI.    The County

In Count II, Plaintiffs assert a claim against the County for race discrimination in violation of § 1981 and § 1983. Count III asserts a § 1983 claim against the County alleging race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Because the § 1983 claims are effectively redundant, the Court will construe Count II as a § 1981 claim and Count III as a § 1983 claim. Although the allegations relating to these claims are highly confusing and sprawling, the Court construes them as alleging that the County engaged in race discrimination against them based on a custom or policy of using a promotion system, including the use of its promotion tests, that effectively discriminates against Black officers, and through a practice of otherwise denying promotions to Plaintiffs based on race.

Defendants seek dismissal of Counts II and III on the grounds that the allegations are insufficient to demonstrate any race discrimination pursuant to a PGCPD custom or policy. To prevail on a § 1983 claim, Plaintiffs must establish that (1) they were deprived of a federal statutory or constitutional right, in this case, a violation of the Equal Protection Clause through race discrimination; and (2) the deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1993). To hold a municipality liable for a violation of rights under § 1983, a plaintiff must allege a municipal custom or policy which caused the injury to the plaintiff's constitutional rights. *Monell v. Dept. of Soc. Servs. of Cnty. of New York*, 436 U.S. 658, 691–92 (1978). The fact that the local government employed individuals who violated

the plaintiff's rights is not sufficient to establish liability. *See id.* Rather, a plaintiff must plausibly allege an unconstitutional custom, policy, or practice which caused the deprivation of rights. *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003). Such a custom, policy, or practice may "arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom," which may be demonstrated by "numerous particular instances of unconstitutional conduct." *Id.* (citations omitted). In particular, such a custom or practice "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). The same requirement that the discrimination be the result of a custom or policy is required to establish governmental liability on a § 1981 claim. *See Dennis v. City of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

Here, Plaintiffs have sufficiently alleged § 1983 race discrimination claims based on two different customs, policies, or practices. Plaintiffs have alleged that the failures to promote Sgt. Grant and Sgt. Ervin to lieutenant were the result of a PGCPD policy decision not to continue to use the 2018 promotion eligibility list past the original expiration date of February 2020, or two months before the originally scheduled 2020 promotion test, until July 2020, or two months before the rescheduled 2020 promotion test. Plaintiffs allege that this decision was made for discriminatory reasons, because many of the candidates who stood to be promoted during that time period were Black or Hispanic officers. Although Plaintiffs have not alleged direct evidence of such a discriminatory intent, that decision was made in the context of the broader history of the PGCPD promotion tests and policy, which included the 2017 panel's findings that the promotion policy had a disparate impact on Black and Hispanic officers and the failure of PGCPD to take any

17

steps to address those disparities in the subsequent three years.  As the Court found in *HNLEA*, where "PGCPD has been aware of the significant disparities in promotion rates based on race dating back at least to 2012 but has done virtually nothing to address them," "[s]uch deliberate indifference provides . . . evidence of discriminatory intent."  *HNLEA*, 535 F. Supp. 3d at 421–22.

Plaintiffs have further alleged a series of personnel decisions involving Grant in which allegedly less qualified white officers received the higher level or more prestigious positions sought by Grant and also referenced a broader history at PGCPD of troubling promotion decisions, including the promotion of officers who demonstrated discriminatory animus and denials of promotions to Black officers who complained about discrimination.  In addition, Plaintiffs have described a series of incidents, including some directed at Sgt. Grant or Sgt. Ervin, that arguably support the allegation of widespread racial hostility at PGCPD.  Considered together, and taking all allegations in the light most favorable to Plaintiffs as is required at this early stage, the Court finds that the Second Amended Complaint contains sufficient allegations to support a finding that the allegedly discriminatory personnel actions by specific PGCPD officers or officials and occurring within the three-year limitations period were the result of intentional discrimination and a PGCPD custom, policy, or practice of permitting or condoning race discrimination in promotions that was sufficiently "persistent and widespread" and "flagrant" as to meet the requisite standard.  *Spell*, 824 F.2d at 1387; *Owens*, 767 at 402-03; *see also McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756727, at *5–6 (D. Md. Aug. 7, 2018) (stating that district courts within the Fourth Circuit have denied motions to dismiss on *Monell* claims "without requiring plaintiffs to plead the existence of multiple past incidents with specificity") (collecting cases).  Thus, the Motion will be denied as to Counts II and III.

## VII.    Title VII Discrimination

In opposing Grant's claim in Count V for race discrimination under Title VII, Defendants argue only that the claim is time-barred because it is based on events occurring more than 300 days before the filing of an EEOC charge.  Under Title VII, as relevant here, "a charge under this section shall be filed within . . . three hundred days after the alleged unlawful employment practice occurred."  *See* 42 U.S.C. § 2000e-5(e)(1); *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Plaintiffs bringing Title VII claims in Maryland are subject to a 300-day statute of limitations.").

Where the original EEOC charge was filed on March 4, 2019, Defendants correctly state that Plaintiffs may not pursue a Title VII claim based on the removal of Sgt. Grant from the FBI Task Force in 2017.  However, as stated in the Second Amended Complaint and clarified in later briefing, Grant's Title VII claim relates only to those actions which occurred within 300 days of the most recent EEOC charge, specifically the charge filed on February 24, 2022, consisting of the failure to promote Grant after the January 2022 promotion test and the failure to transfer her back to the Public Corruption Unit in January 2022.  With the Title VII claim narrowed to these incidents, the Motion will be denied as to the Title VII discrimination claim in Count V.  Nevertheless, evidence relating to earlier events may still constitute admissible evidence on the timely claims if the relevance to those claims can be established.

## VIII.   Title VII Retaliation

Finally, Defendants seek dismissal of the Title VII retaliation claim in Count IV as failing to state sufficient facts to support a viable claim. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . individual . . . because he has opposed any practice made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-

3(a). To state a retaliation claim, a plaintiff must allege facts demonstrating that (1) the plaintiff engaged in a protected activity, such as filing a charge of discrimination with the EEOC; (2) the employer took a materially adverse action against the plaintiff; and (3) "the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (quoting *Beal v. Abbott Labs*, 130 F.3d 614, 619 (4th Cir. 1997)).

Defendants do not dispute that Sgt. Grant engaged in protected activity when she filed an internal EEO complaint on January 4, 2021 and when she filed a EEOC charge on January 27, 2021. Defendants contend that Sgt. Grant has not met the second or third prong because she has not identified a materially adverse action against her and has failed to allege facts demonstrating a causal connection between the protected activity and that action.

On a retaliation claim, a materially adverse employment action is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Sgt. Grant alleges that the materially adverse actions following her protected activities were the failure to promote her to lieutenant during 2021 and the failure in or about January 2022 to provide her with the opportunity to apply for a position in the Public Corruption Unit, a position she previously held, which was eventually filled with a less qualified white man. Where both of these alleged actions involve either a failure to promote or a failure to transfer to a more prestigious or desirable position, they qualify as materially adverse actions for purposes of a retaliation claim. *See Buckley v. Mukasey*, 538 F.3d 306, 321–22 (4th Cir. 2008) (reinstating a retaliation clam based on a failure to promote as the materially adverse action); *Bala v. Commonwealth of Va. Dept. of Conserv. & Recreation*, 532 F. App'x 332, 336 (4th Cir. 2013) (finding a viable retaliation claim where the materially

20

adverse action was a failure to select the plaintiff for an interview for a position).  Grant has sufficiently alleged materially adverse actions to meet her burden at this stage.

As for a causal connection, Defendants argue that there is insufficient temporal proximity between the protected activity and the alleged materially adverse actions.  At the motion-to-dismiss stage, a causal connection can be deemed to be sufficient when the employer takes the materially adverse action "shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).  Such causation has been sufficiently established when the materially adverse action occurs within a few weeks or months of the protected activity.  *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (noting that courts have found a causal connection when the adverse action was taken four months after the filing of a discrimination complaint and finding such causation for purposes of a *prima facie* case of retaliation when the plaintiff was demoted four months after his protected activity).  However, the time period can be longer when the materially adverse action took place at the first reasonable opportunity to retaliate in the chosen manner.  *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (stating that "in the context of [a] particular employment situation," a length of time of more than two months "does not undercut the inference of causation" because the materially adverse action occurred at a "natural decision point," specifically the end of the school year).

Here, Grant has alleged that after she filed an internal EEO complaint and an EEOC charge in January 2021, she was denied what she understood to be an automatic promotion during the time period from September 2020 to September 2021, which would be the next possible opportunity to retaliate through the general promotion process.  Similarly, although the denial of the opportunity to be considered for the Public Corruption Unit position occurred in approximately January 2022, one year after she filed her complaints, it was arguably the next time that there was

an open position in that unit and therefore the next opportunity to retaliate in this way. *Cf. Williams v. Giant Food, Inc.*, 370 F.3d 423, 430–31 (4th Cir. 2004) (stating that when an employer fails to make employees aware of vacancies, the employee may be treated as having actually applied for a specific position for purposes of a discrimination claim).   Viewing the allegations in the light most favorable to Plaintiffs, as is required at this stage, the Court finds that Plaintiffs have asserted sufficient facts on the issue of causation.   Accordingly, the Motion will be denied as to the Title VII retaliation claim in Count IV.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.   The Motion will be granted as to Count I and denied as to Counts II, III, IV, and V.   Defendants' Motion to Strike will be DENIED.   A separate Order shall issue.

Date:  September 18, 2023

THEODORE D. CHUANG
United States District Judge